1  JOHN A. RUSSO, City Attorney - State Bar #129729
   RANDOLPH W. HALL, Assistant City Atty., SBN 080142
2  JAMES F. HODGKINS, Supervising Trial Atty., SBN 142561
   CHARLES E. VOSE, Senior Deputy City Atty., SBN 139700
3  KANDIS A. WESTMORE, Deputy City Atty., SBN 194594
   One Frank H. Ogawa Plaza, 6th Floor
4  Oakland, California 94612
   Telephone:  (510) 238-3589, Fax:  (510) 238-6500
5  kawestmore@oaklandcityattorney.org
   25759/407036
6
   Attorneys for Defendants CITY OF OAKLAND,
7  JOHN RUSSO, ETHAN NASR, JACOB GRAEF,
   AND ARTURO SANCHEZ

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED ANDY IVEY DBA AFI MARKETING AND JOHN IVEY,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, CALIFORNIA, 370 EMBARCADERO W LLC, VANGUARD PROPERTIES, INC., JACOB GRAEF, JOHN RUSSO, ETHAN NASR, TOM BERLIN, ARTURO SANCHEZ, and DOES 1 THROUGH 50,<br><br>    Defendants. | Case No. C07-02675 EDL<br><br>**NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Date:        July 10, 2007<br>Time:       9:00 a.m.<br>Courtroom: Courtroom E, 15th Floor<br>Magistrate Judge Elizabeth D. Laporte |

1

**TABLE OF CONTENTS**

2                                                                            **Page No(s).**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS...................................................................................... 3

III.  LEGAL ARGUMENT ............................................................................................ 6

    A.   THE COMPLAINT IS UNCERTAIN AND FAILS TO ALLEGE SPECIFIC ACTS ON THE PART OF EACH NAMED DEFENDANT OR THE CAPACITY IN WHICH THEY ARE BEING SUED. ............................................................................................ 6

    B.   PLAINTIFF WAS NOT EXCUSED FROM COMPLYING WITH PROCEDURAL REQUIREMENT TO ATTACK THE CITY'S ADMINISTRATIVE DETERMINATION VIA WRIT PROCEEDINGS. ............................................................................ 6

    C.   PLAINTIFFS' INVERSE CONDEMNATION CLAIM FAILS TO ALLEGE THAT DEFENDANTS' ACTIONS RESULTED IN A TAKINGS FOR PUBLIC USE. ........................................................... 7

    D.   THE CITY'S NUISANCE ABATEMENT ACTION WAS A REGULATORY ACTION WITHIN ITS POLICE POWER, NOT A TAKING OF PROPERTY REQUIRING COMPENSATION TO THE OWNER........................................................................................... 7

    E.   THE FIFTH CAUSE OF ACTION FOR LIBEL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED............................... 8

        1.   The libel claim fails to allege that plaintiffs complied with the claims presentation requirements of the Government Code. ..................... 8

        2.   Defendant Lt. Berlin is immune from liability for the alleged misrepresentations. ......................................................................... 9

        3.   Defendant's statements were privileged. ..................................................... 9

    F.   THE CITY DEFENDANTS ARE NOT LIABLE FOR INJURIES CAUSED BY THEIR PROSECUTION OF ANY JUDICIAL OR ADMINISTRATIVE PROCEEDING. ............................................................... 10

    G.   DEFENDANTS ARE NOT LIABLE FOR ENFORCEMENT OF NUISANCE ABATEMENT LAWS................................................................... 11

    H.   TO THE EXTENT THAT PLAINTIFFS' CLAIMS ARISE OUT OF ACTIONS OF OTHERS DEFENDANTS CANNOT BE LIABLE FOR ACTIONS OF THIRD PARTIES. ............................................................... 11

    I.   THE FIRST CAUSE OF ACTION FAILS TO ALLEGE THAT PLAINTIFFS ARE MEMBERS OF A PROTECTED CLASS OR THAT OTHER SIMILARLY SITUATED BUSINESSES WERE TREATED DIFFERENTLY. ............................................................... 11

    J.   PLAINTIFFS' SECOND CAUSE OF ACTION FAILS TO STATE A DUE PROCESS CLAIM BECAUSE THEY WERE NOT ENTITLED TO APPEAL LETTERS WRITTEN TO THEM BY THE CITY ATTORNEY'S OFFICE. .................................................................. 12

1  K. PLAINTIFFS' FIRST AMENDMENT CLAIM MUST BE DISMISSED BECAUSE THE FACE OF THE COMPLAINT SHOWS THERE IS NO BASIS FOR THE CLAIM BEYOND PLAINTIFFS' SPECULATION. .................................................................. 13

L. THE FIRST, SECOND AND THIRD CIVIL RIGHTS CAUSES OF ACTIONS FAIL TO ALLEGE THAT THE ALLEGED MISCONDUCT WAS THE RESULT OF A CITY POLICY OR CUSTOM. ...................................................................................................... 14

IV. CONCLUSION ................................................................................................................ 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page No(s).**

FEDERAL CASES

Asher v. Pacific Power and Light Co.,
  249 F. Supp. 671, 676 (N.D.Cal. 1965 ........................................................................... 7

Bingham v. City of Manhattan Beach,
  341 F.3d 939, 948-949 (9th Cir. 2002) .......................................................................... 12

City of St. Louis v. Praprotnick,
  485 U.S. 112, 127 (1988) .............................................................................................. 14

Freeman v. City of Santa Ana,
  68 F.3d 1180, 1188 (9th Cir. 1995) ............................................................................... 12

Gillette v. Delmore,
  979 F.2d 1342, 1348 (9th Cir. 1992) ............................................................................. 14

Jett v. Dallas Independent School District,
  491 U.S. 701, 737 (1989) .............................................................................................. 15

Monell v. New York Department of Social Services,
  436 U.S. 658, 694 (1978) .............................................................................................. 14

Oviatt v. Pierce,
  954 F.2d 1470, 1474 (9th Cir. 1992) ............................................................................. 14

Police Department v. Mosley,
  408 U.S. 92, 9 ................................................................................................................ 13

Trevino v. Gates,
  99 F.3d 911, 918 (9th Cir. 1996) ................................................................................... 15

Ulrich v. City and County of San Francisco,
  308 F.3d 968 (9th Cir. 2002) ......................................................................................... 14

Western Mining Council v. Watt,
  643 F.2d 618, 624 (9th Cir. 1981 .................................................................................. 14

Wright v. Riveland,
  219 F.3d 905, 913 (9th Cir. 2000 .................................................................................. 13

STATE CASES

Amylou R. v. County of Riverside,
  28 Cal.App.4th 1205 (1994 ........................................................................................... 10

Briggs v. Lawrence,
  (1991) 230 Cal.App.3d 605, 613 ..................................................................................... 8

City of Mill Valley v. Transamerica Ins. Co.,
  98 Cal.App.3d 595 (1st Dist. 1979 .................................................................................. 7

Customer Co. v. City of Sacramento,
  10 Cal.4th 368 (1995 ....................................................................................................... 7

Duffy v. City of Long Beach,
  210 Cal.App. 3d 1352, 1358 (1988 ................................................................................. 8

Gensburg v. Miller,
  (1994) 31 Cal.App.4th 512, 51 ...................................................................................... 10

Ingram v. Flippo,
    74 Cal.App.4th 1280, 129 ........................................................................................... 10
Leppo v. City of Petaluma,
    20 Cal.App.3d 711 (1st Dist. 1971 ................................................................................ 7
Masters v. San Bernardino County Employees Retirement Association, 32
    Cal.App.4th 30, 42 ................................................................................................... 7, 9
Niles Sand & Gravel Co. v. Alameda County Water Dist.,
    37 Cal.App.3d 924 (1st Dist. 1974 ................................................................................ 7
Ogborn v. City of Lancaster,
    101 Cal.App.4th 448, 46 ............................................................................................ 10
Rogers v. Centrone,
    261 Cal.App.2d 361 (1968 ............................................................................................ 8
Scannell v. County of Riverside
    (1984) 152 Cal.App.3d 596, 60 .................................................................................. 10
Sierra Canyon Company, Ltd. v. California Coastal Commission
    (2004) 120 Cal.App.4th 663, 66 ............................................................................... 6, 7
State v. Superior Court,
    (2004) 32 Cal.4th 1234, 1239 ....................................................................................... 8

FEDERAL STATUTES

42 U.S.C Section 1983 ........................................................................................... 1, 2, 3
Gov. Code Section 821 ................................................................................................. 10
Government Code §820 ................................................................................................ 11
Government Code §822 .................................................................................................. 9
Govt. Code Sections 950-950 ......................................................................................... 8
Health and Safety Code §11570 ................................................................................... 11
Health and Safety Code §17980 ................................................................................... 11
Penal Code 647(b) ........................................................................................................ 11

STATE STATUTES

Cal. Gov. Code §910 ...................................................................................................... 8
Cal. Gov. Code §945. ..................................................................................................... 8
Cal. Gov. Code §945.4 ................................................................................................... 8
California Civil Code §47(a) .......................................................................................... 9

FEDERAL RULES

FRCP 12(b)(6) ................................................................................................................. 1

CITY ORDINANCE

Oakland Municipal Code Section 1.08.04 ........................................................... 3, 4, 5, 6

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on July 10, 2007, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom E, 15th Floor of the above-entitled court, Defendants City of Oakland, et al., will move the court to dismiss the specified portion of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. The said Oakland defendants bring this motion under Federal Rule of Civil Procedure, Rule 12(b)(6) as the Complaint fails to state a viable cause of action against defendants as to all plaintiffs under 42 U.S.C. §1983.

Defendants seeks dismissal pursuant to Federal Rules of Civil Procedure §12(b)(6) on the following grounds:

1. The complaint is uncertain and fails to allege specific acts on the part of each named defendant or the capacity in which they are being sued.

2. Plaintiff was not excused from complying with procedural requirement to attack the city's administrative determination via writ proceedings.

3. Plaintiffs' inverse condemnation claim fails to allege that defendants' actions resulted in a takings for public use.

4. The city's nuisance abatement action was a regulatory action within its police power, not a taking of property requiring compensation to the owner.

5. The fifth cause of action for libel fails to state a claim upon which relief can be granted.

   **a.** The libel claim fails to allege that plaintiffs complied with the claims presentation requirements of the government code.

   **b.** Defendant lt. Berlin is immune from liability for the alleged misrepresentations.

   **c.** Defendants' statements were privileged.

6. The city defendants are not liable for injuries caused by their prosecution of any judicial or administrative proceeding.

7. Defendants are not liable for enforcement of nuisance abatement laws.

8. To the extent that plaintiffs' claims arise out of actions of others defendants cannot be liable for actions of third parties.

9. The first cause of action fails to allege that plaintiffs are members of a protected class or that other similarly situated business were treated differently.

10. Plaintiffs' second cause of action fails to state a due process claim because they were not entitled to appeal letters written to them by the city attorney's office.

11. Plaintiffs' first amendment claim must be dismissed because the face of the complaint shows there is no basis for the claim beyond plaintiffs' speculation.

12. The first, second and third civil rights causes of actions fail to allege that the alleged misconduct was the result of a city policy or custom.

The motion is based on this Notice, Defendants' Memorandum of Points and Authorities in Support of Motion to Dismiss, Request for Judicial Notice, the court file in this action together with such evidence, oral and documentary, as may be presented at the hearing of this motion.

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### I.   INTRODUCTION

This action arises from the City of Oakland's legal and administrative efforts to obtain nuisance abatement of the property located at 370 Embarcadero West in Oakland. Plaintiffs were and still may be tenants in that building. Plaintiffs Fred Ivey dba AFI Marketing and John Ivey ("Plaintiffs") filed this action alleging claims under 42 U.S.C. Section 1983 for violations of their rights to equal protection and due process under the Fourteenth Amendment to the United States Constitution,[1] and free speech under the First Amendment. Plaintiffs also allege state law claims for, Inverse Condemnation, Libel (against Lt. Tom Berlin[2] only), and Breach of the Covenant of Good Faith and Fair Dealing (against 370 Embarcadero LLC only). The complaint names as defendants the City of Oakland, 370 Embarcadero W. LLC, Vanguard Properties, Inc., Oakland City Attorney John Russo[3], former Deputy City Attorney Ethan Nasr, Oakland Police Department employee

---

[1] It should be noted that the due process claim is not identified as a procedural or substantive due process claim. Thus, it is unclear. It appears, however, that the claim is intended to be a procedural due process claim which would arise under the 5th Amendment for denial of notice and opportunity to be heard. Due to the uncertainty of the claim, it is difficult for defendants' to form a response. As such, defendants' response is based on the assumption that plaintiffs' intend to allege a procedural due process claim.

[2] It should be noted that there is no Tom Berlin employed by the Oakland Police Dept. as Lieutenant or otherwise nor was there at the time of the incidents described in the complaint. As such, this motion is not being filed on behalf of defendant Tom Berlin.

[3] It is unclear why City Attorney John Russo is named as a defendant in this action and it is impossible to tell whether he or any other individually named defendant is being sued in his official or individual capacity. The

1  Jacob Graef, Lt. Tom Berlin and City of Oakland employee Arturo Sanchez.

2  The City defendants bring this motion to dismiss the complaint on the grounds that
3  Plaintiffs have failed to state federal or state claims against them upon which relief can be granted.

## II.   STATEMENT OF FACTS

5  Defendants present the following statement of facts as alleged by plaintiffs in their
6  Complaint.[4]

7  Plaintiffs' operated a night club called "Mingles" at 370 Embarcadero West, Oakland,
8  California ("the property") since July 2002. Plaintiffs had a lease with the owner of the property,
9  Marilyn Cohn aka Marilyn Arnold effective from July 2002 through June 30, 2009. (Complaint at
10 3:14-25.) The Complaint alleges that a letter dated May 11, 2006 signed by defendant Nasr from
11 the City Attorney's Office was addressed to Marilyn Arnold concerning 370 Embarcadero West
12 stating that the property was a nuisance and threatened "drastic remedies" including administrative
13 and legal fees. (*Id.* at 4:1-5.) Plaintiffs allege that after learning of the nuisance letter, they
14 attempted to file an "Administrative Appeal Declaration of Nuisance" with the City of Oakland,
15 and defendant Arturo Sanchez would not accept the appeal. (*Id.* at 4:6-10.) The rejection of such an
16 appeal would have been proper because the City Attorney's Office does not issue Declarations of
17 Nuisances from which an administrative appeal can be taken. Rather, such authority is vested in the
18 City Manager. (See Oakland Municipal Code Section 1.08.040 attached to Defendants' Request for
19 Judicial Notice ("RJN") as Exhibit A.) Actually, the property was declared a public nuisance on
20 May 15, 2006, the notice of which was sent via certified mail to the owner of the property Marilyn
21 Cohn Arnold. (RJN, Exhibit B.) The notice informed the owner of her right to appeal and provided
22 her with an administrative appeal form. (*Id.*) Plaintiffs subsequently negotiated with the city and
23 voluntarily instituted a number of recommendations concerning security and dress codes.
24 (Complaint at 4:11-12.)

25  Defendant 370 Embarcadero apparently purchased the property from Marilyn Arnold and

---

27  complaint contains no allegations of acts or omissions on his part. At most, it appears that his name was on the letterhead of a letter sent by defendant Ethan Nasr. (Complaint at 4:1-2.)

28  [4] Reference is also made to documents of which the court can take judicial notice.

NOTICE OF MTN., MOTION AND MEMO. OF    -3-    C 07-2675 EDL
P'S AND A'S ISO DFNTS' MOTION TO
DISMISS

Plaintiffs' lease was assigned to it. (*Id*. at 4:13-14.) There are no facts alleged to indicate that the lease no longer exists.

On November 11, 2006, Deanna Smith was shot and killed in the 200 block of Webster Street in Oakland. (*Id*. at 4:15-16.) Defendant Lt. Tom Berlin of the Oakland Police Department arrived on the scene to investigate the shooting. (*Id*. at 4:20-21.) Lt. Berlin made statements to the media that Ms. Smith had been in Mingles immediately prior to the shooting. He stated that there were two factions shooting at each other and that Ms. Smith was caught in the crossfire, and that the shooting was associated with Mingles Club. (*Id*. at 4:21-24.) Lt. Berlin's statements were repeated in radio, television and newspaper accounts[5]. (*Id*. at 4:25-5:1.) Thereafter, out of concern for public safety, plaintiff John Ivey voluntarily closed Mingles Night Club. (*Id*. at 5:2-3.)

After conducting their own investigation and concluding that the shooting was not related to their operations, plaintiffs met with city representatives on December 1, 2006 to discuss the reinstatement of their cabaret permit.[6] (*Id*. at 5:4-10.) Administrative hearing officer Barbara Killey stated that she considered the cabaret permit suspended by the closing of Mingles. (*Id* at 5:11-12.) However, at the meeting Plaintiff Fred Ivey announced his intention to reopen on December 15, 2006 for sales of alcoholic beverages only until he could obtain a cabaret permit. (*Id*. at 5:15-16.) Plaintiffs do not allege that the City told them that they could not go forward with that plan.

Plaintiffs then engaged the services of a Mr. Rodriguez to make general repairs to the interior of the building including the repair of a dangerous condition on the floor. (*Id*. at 5:17-19.) There are no allegations that the need for such repairs were ever discussed with the city representatives or that the city was aware of a dangerous condition existing on the property. While making the repairs in January 2006[7], members of the Oakland Police Department instructed Mr.

---

[5] Plaintiffs allege that the statements were defamatory. However, such allegations are not facts. Rather, they are bald legal conclusions. The complaint is unclear about whether Lt. Berlin repeated the same statements to each media source or whether his initial statement was simply repeated by different media sources. The complaint gives no dates for when the alleged statements were published.

[6] There are no allegations that plaintiffs' cabaret permit was ever revoked.

[7] This date must be a typo by plaintiffs because they did not decide to re-open until 12/15/06. So, it is unlikely that Mr. Rodriguez started making the repairs in January of 2006. Defendants can only assume plaintiffs' intended to allege that the work began in January 2007.

1  Rodriguez to cease working without a permit and without permission of the owner. (*Id*. at 5:20-23.)
2  Plaintiffs were unable to contact the owner. (*Id*. at 5:24-25.)
3       Mr. Rodriguez then went to the city for a permit and was told that a special note had been
4  placed in the property file instructing no permits to be issued. (*Id*. at 5:26-28.) There are no
5  allegations regarding the source of this "special note."
6       On or about January 6, 2007, another letter signed by defendant Ethan Nasr with City
7  Attorney John Russo's name on it, addressed to Marge Vincent, agent for 370 Embarcadero, was
8  mailed. (*Id*. at 6:3-6.) The letter was an official notice of nuisance activity at 370 Embarcadero[8].
9  And no notice was given to plaintiffs. (*Id*. at 6:6-7.) Defendant 370 Embarcadero did not inform
10 plaintiffs of the notice of nuisance, did not appeal the determination and allowed a thirty day appeal
11 period to expire. (*Id*. at 6:8-12.)
12      Upon learning of the nuisance declaration, plaintiffs requested information about how to
13 appeal the determination and were told by city officials that plaintiffs had no standing and could not
14 appeal. (*Id.* at 6:13-15.) Plaintiffs do not allege that they ever presented evidence to city officials
15 that they did indeed have standing to appeal the nuisance determination given that they were not the
16 owners of the property.
17      Plaintiffs contend that on December 15, 2007, a date that is in the future, defendant Graef
18 caused to be posted an official form at the premises closing the business until "complete
19 inspections…" (*Id*. at 6:21-22.) After December 16, 2007, again a date in the future, plaintiffs
20 allegedly made numerous attempts to learn from defendant Graef, John Russo and Laura Blair how
21 to obtain the inspections the city desires, but received no answers. (*Id*. at 6:23-27.)[9]
22      On January 23, 2007, Plaintiff Fred Ivey sent (sic) a letter to Marge Vincent, and 370

---

[8] This allegation is impossible because, as stated above, the City Attorney does not issue official public nuisance declarations at all let alone any from which plaintiffs could appeal. Such a declaration would have to come from the City Administrator or her designee, not the City Attorney. (O.M.C. 1.08.040.) And the declaration of nuisance had previously been issued by the City back on May 15, 2006. (RJN, Exhibit B.) Any letter from the City Attorney's Office regarding the nuisance would have been sent in anticipation of filing a nuisance abatement court action.

[9] Plaintiffs have improperly alleged facts to have occurred in the future and future acts cannot form the basis for their claims. Even if they intended to allege that the events occurred in December of 2006, it makes no sense in relationship to the dates of the other facts alleged. December 15, 2006 was the day that plaintiffs first announced that he planned to re-open. There couldn't have been a closure notice on that same day because plaintiffs subsequently hired someone to do work on the inside of the property and the work began in January of 2007.

1  Embarcadero has never responded. (*Id*. at 6:28-7:2.) On January 24, 2007 Defendant 370
2  Embarcadero filed an unlawful detainer action against plaintiff Fred Ivey in Alameda County
3  Superior Court Case No. WG07307885. (*Id*. at 7:3-4.)  That action is still pending (RJN, Exhibit
4  C.)

5                          **III.    LEGAL ARGUMENT**

6  **A.    THE COMPLAINT IS UNCERTAIN AND FAILS TO ALLEGE SPECIFIC ACTS ON THE PART OF EACH NAMED DEFENDANT OR THE**
7  **CAPACITY IN WHICH THEY ARE BEING SUED.**

8          The allegations of the complaint are so vague and ambiguous that there are no allegations of
9  specific acts or omissions on the part of each individually named defendant. For example, there are
10 no specific acts or omissions alleged on the part of City Attorney John Russo other than that his
11 name appears on the letterhead of two letters written by former Deputy City Attorney Ethan Nasr.
12 Further, the complaint does not allege in what capacity John Russo, Arturo Sanchez, Ethan Nasr
13 and Tom Berlin are being sued. Notice pleading standards require that defendants be put on notice
14 of the claims against them. Individual capacity and official capacity suits have very different
15 implications for defendants, and the defenses that defendants will raise depend on the capacities in
16 which they are being sued.

17         Therefore, if the court gives plaintiffs leave to amend the complaint, defendants request that
18 they be required to allege specific acts or omissions on the part of each named defendant with
19 specific dates for each act. The dates currently alleged in the complaint are largely confusing or
20 nonexistent. The court should also order plaintiffs to indicate in what capacity each individually
21 named defendant is being sued. The allegations in the complaint appear to allege acts (to the extent
22 any acts are alleged) in the defendants' official capacities except for Lt. Tom Berlin who is the only
23 one being sued for libel, but defendants can only speculate at this point.

24 **B.    PLAINTIFF WAS NOT EXCUSED FROM COMPLYING WITH PROCEDURAL REQUIREMENT TO ATTACK THE CITY'S**
25 **ADMINISTRATIVE DETERMINATION VIA WRIT PROCEEDINGS.**

26         Compliance with the procedural requirements for a petition for writ of administrative
27 mandamus is a necessary predicate to institution of inverse condemnation proceedings. *Sierra*
28 *Canyon Company, Ltd. v. California Coastal Commission* (2004) 120 Cal.App.4th 663, 669. This is

1  so regardless of whether plaintiff pleads her cause of action as one for inverse condemnation or as a
2  denial of due process because the essential underpinning is the invalidity of the administrative
3  action. *Id*.

4     Plaintiffs have not and cannot allege that they sought relief via writ proceedings to challenge to
5  validity of the City's administrative nuisance abatement actions before filing this action. Therefore,
6  their claims for inverse condemnation, due process should be dismissed. Even the defamation
7  claim, the underpinning of which is that the officer wrongly concluded that the shooting was related
8  to plaintiffs' operations, should be dismissed under the same principle here.

**C.   PLAINTIFFS' INVERSE CONDEMNATION CLAIM FAILS TO ALLEGE THAT DEFENDANTS' ACTIONS RESULTED IN A TAKINGS FOR PUBLIC USE.**

11     Actions for inverse condemnation under California law are based on Article 1, Section 14
12  (now Section 19), of the California Constitution, which prohibits the taking or damage of private
13  property for public use where there is no just compensation provided. *Asher v. Pacific Power and*
14  *Light Co.*, 249 F. Supp. 671, 676 (N.D.Cal. 1965). As such, plaintiff must allege that the
15  defendants' actions constituted a taking for public use for which no compensation was provided.
16  *City of Mill Valley v. Transamerica Ins. Co.*, 98 Cal.App.3d 595 (1st Dist. 1979).

17     Plaintiffs have not alleged that the so-called taking was for public use. And the property
18  damage for which plaintiffs seek to recover bares no relation to a "public improvement" or "public
19  work" of any kind. As such, the government's potential liability should be evaluated under the Tort
20  Claims Act to the extent that plaintiffs seek relief under state law. *Customer Co. v. City of*
21  *Sacramento*, 10 Cal.4th 368 (1995). And the inverse condemnation claim should be dismissed.

**D.   THE CITY'S NUISANCE ABATEMENT ACTION WAS A REGULATORY ACTION WITHIN ITS POLICE POWER, NOT A TAKING OF PROPERTY REQUIRING COMPENSATION TO THE OWNER.**

25     When the activities of the public agency have been carried on in the exercise of its police
26  powers, the effect of those activities on the plaintiff's property is not compensable under the state
27  constitution. *Niles Sand & Gravel Co. v. Alameda County Water Dist.*, 37 Cal.App.3d 924 (1st Dist.
28  1974); *Leppo v. City of Petaluma*, 20 Cal.App.3d 711 (1st Dist. 1971); *Duffy v. City of Long Beach*,

210 Cal.App. 3d 1352, 1358 (1988).

Plaintiffs complain of the City's administrative determinations that the property where they conducted business was a nuisance. Such nuisance actions taken by the city in this case were authorized by Oakland Municipal Code ("OMC") Section 1.08 et seq. Therefore, the City's actions were carried out in the exercise of its police powers and the effects on Plaintiffs' lease resulting from those actions are not compensable under an inverse condemnation theory.

E.  **THE FIFTH CAUSE OF ACTION FOR LIBEL FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

   **1.  The libel claim fails to allege that plaintiffs complied with the claims presentation requirements of the Government Code.**

Under the California Tort Claims Act "all claims for money or damages against local public entities" are subject to the claims presentation requirements set forth in Cal. Gov. Code §910 et seq. Specifically, §911.2 requires that potential litigants seeking money damages in a civil action against a public entity must first file a claim and that it be filed within six months of accrual of the action. No suit for money or damages may be brought against a public entity on a cause of action for which a claim is required until a written claim has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board. See Cal. Gov. Code §945.4. The "failure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to demurrer for failure to state a cause of action." *State v. Superior Court,* 32 Cal.4th 1234, 1239 (2004). Timely filing of a claim is an essential element of a cause of action against a public entity and failure to allege compliance with the claims statute renders a Complaint under Tort Claims Act subject to general demurrer. *Briggs v. Lawrence,* 230 Cal.App.3d 605, 613 (1991).

The claims procedures and the statute of limitations applicable to actions against public employees are the same for actions against public entities. Govt. Code Sections 950-950.6; *Rogers v. Centrone,* 261 Cal.App.2d 361 (1968).

Here, plaintiffs have not alleged facts demonstrating or excusing compliance with the claim presentation requirement for their libel claim against Lt. Tom Berlin who plaintiffs have identified as a city employee. Therefore, the fifth cause of action fails to state a claim upon which relief can

be granted and should be dismissed.

**2. Defendant Lt. Berlin is immune from liability for the alleged misrepresentations.**

As a public employee, defendant is not liable for an injury caused by his misrepresentations, whether or not such misrepresentations were negligent or intentional, unless they are guilty of actual fraud, corruption, or actual malice. Government Code §822.2. Thus, a public employee is liable for misrepresentations only if he "is motivated by corruption or actual malice, i.e., a conscious intent to deceive, vex, annoy or harm the injured party." *Masters v. San Bernardino County Employees Retirement Association*, 32 Cal.App.4th 30, 42. Here, plaintiffs have failed to identify, with any specificity, the allegedly false statements, how the statements were false, and has not alleged facts demonstrating the proponent's intent. Plaintiffs simply allege that Tom Berlin made false statements to the press that were published. (Complaint at 9:15.) Therefore, defendant is not liable for the alleged misrepresentations.

**3. Defendant's statements were privileged.**

Further, California Civil Code §47(a) and (c) state in pertinent part that a publication is privileged if it is made in the "proper discharge of an official duty" or "in a communication, without malice, to a person interested therein (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information."

Here, plaintiffs allege that among the false statements made were that the shooting was associated with Mingles. Plaintiffs have not alleged how that statement which was an opinion the Lt. reached as a result of his investigation, was false. Moreover, to the extent that the statements were made by Lt. Berlin in an effort to abate crime and nuisance activity associated with the subject property, they were made in the proper discharge of an official duty (exercise of police power) and are privileged as a matter of law. As to any verbal communications from defendant to the media regarding the nuisance activity associated with plaintiff's business, those statements are privileged as well. The media was certainly interested in the communications regarding the City's law

1 enforcement actions concerning the property especially in light of the shooting. And no facts are
2 alleged indicating malice in those communications. At best, Plaintiffs have alleged that they
3 disagree with the conclusion reached by Lt. Berlin. Hence, the statements alleged to be defamatory
4 are privileged and not actionable.

### F. THE CITY DEFENDANTS ARE NOT LIABLE FOR INJURIES CAUSED BY THEIR PROSECUTION OF ANY JUDICIAL OR ADMINISTRATIVE PROCEEDING.

7 To the extent that plaintiffs seek relief under state law, public employees acting within the
8 scope of employment are personally immune from liability for the prosecution of judicial or
9 administrative proceedings even if they act maliciously and without probable cause. Gov. Code
10 Section 821. 6; *Scannell v. County of Riverside* (1984) 152 Cal.App.3d 596, 604. And under section
11 815.2(b), employee immunity under 821.6 inures to the benefit of the public entity employer.

12 More specifically, the immunity applies to actions in instituting and prosecuting nuisance
13 proceedings. *Ogborn v. City of Lancaster*, 101 Cal.App.4th 448, 462. *See also, Ingram v. Flippo*, 74
14 Cal.App.4th 1280, 1292 (holding that section 821.6 immunizes statement by District Attorney to
15 press, even when no prosecution was initiated.) Actions of state and county social service
16 employees in suspending a foster home license were protected by section 821.6 immunity in
17 *Gensburg v. Miller* (1994) 31 Cal.App.4th 512, 518.

18 Further, the act of a peace officer incidental to his investigation of a crime falls within the
19 immunity of section 821.6. *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205 (1994). In that
20 case the court held that even when an antagonistic relationship between the officer and the victim
21 caused emotional distress to the victim, immunity applied to her causes of action for negligence,
22 assault, false imprisonment, slander, and infliction of emotional distress. *Id.*

23 Similarly here, Lt. Berlin was the officer who arrived at the scene to investigate a shooting
24 and allegedly made statement indicating that he believed the shooting was associated with Mingles
25 – Plaintiffs' night club. And Lt. Berlin allegedly repeated his observations according to television
26 and radio news accounts. As those statements, whether Plaintiffs agree with them or not, were made
27 during the course of his investigation of a crime, they fall within the immunity of 821.6 for the state
28 law claims (Libel and inverse condemnation) against him. The same immunity applies to all

individually named City defendants who played the role in the administrative nuisance action.

### G. DEFENDANTS ARE NOT LIABLE FOR ENFORCEMENT OF NUISANCE ABATEMENT LAWS.

A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Government Code §820.4. Although the complaint does not describe specifically what action was taken by the City Attorney's Office, communications regarding drug, prostitution and other nuisance activity associated with the subject property would typically be made in the enforcement of local and state nuisance abatement laws.[10] Plaintiff has not described the specific action taken by the defendants let alone whether or not the action was taken with due care. Therefore, to the extent that plaintiffs' claims arise out of the defendants' enforcement of nuisance abatement laws, the complaint fails to state a state law claim upon which relief can be granted.

### H. TO THE EXTENT THAT PLAINTIFFS' CLAIMS ARISE OUT OF ACTIONS OF OTHERS DEFENDANTS CANNOT BE LIABLE FOR ACTIONS OF THIRD PARTIES.

Except as otherwise provided by statute, a public employee is not liable for an injury caused by the act or omission of another person. Government Code §820.8. The complaint alleges that defendant 370 Embarcadero filed an unlawful detainer action against them, failed to communicate with plaintiffs etc… To the extent that plaintiffs' state law claims against the city defendants are based on such actions, the city cannot be liable, and the claims should be dismissed accordingly.

### I. THE FIRST CAUSE OF ACTION FAILS TO ALLEGE THAT PLAINTIFFS ARE MEMBERS OF A PROTECTED CLASS OR THAT OTHER SIMILARLY SITUATED BUSINESSES WERE TREATED DIFFERENTLY.

Plaintiffs allege the City's nuisance declaration violated their rights to equal protection under the law. They do not allege, however, that they have been subject to different treatment because they are members of a protected class. And selective enforcement of valid laws, without more, does not make the defendants' action irrational. *Freeman v. City of Santa Ana*, 68 F.3d 1180,

---

[10] City nuisance abatement actions are usually taken pursuant to laws including but not limited to Oakland Municipal Code (O.M.C.) §1.08 et seq., Health and Safety Code §17980, Health and Safety Code §11570 et seq., Penal Code 647(b). Since the complaint alleges nuisance action taken before and after the shooting, it is unclear what type of nuisance actions were being taken by defendants based on the allegations in the complaint.

NOTICE OF MTN., MOTION AND MEMO. OF P'S AND A'S ISO DFNTS' MOTION TO DISMISS  -11-   C 07-2675 EDL

1 | 1188 (9th Cir. 1995). Mere suspicion of improper motivation is insufficient to state an equal
2 | protection claim. *Bingham v. City of Manhattan Beach*, 341 F.3d 939, 948-949 (9th Cir. 2002).
3 |     Plaintiffs have not challenged the validity of the ordinance pursuant to which the city's
4 | nuisance abatement action was taken. Thus, the allegation that the city pursued a policy of
5 | enforcement of valid laws against the plaintiffs that varied from enforcement of those laws as to
6 | other establishments, without more, is insufficient to support a selective enforcement cause of
7 | action. *Id*. Therefore, the first cause of action fails to state a claim upon which relief can be granted
8 | and should be dismissed.

**J. PLAINTIFFS' SECOND CAUSE OF ACTION FAILS TO STATE A DUE PROCESS CLAIM BECAUSE THEY WERE NOT ENTITLED TO APPEAL LETTERS WRITTEN TO THEM BY THE CITY ATTORNEY'S OFFICE.**

11 |     As noted above, the type of due process claim plaintiffs intend to allege is unclear.
12 | Therefore, defendants can only assume that Plaintiffs intend to allege a procedural due process
13 | claim under the Fifth Amendment made applicable to the states by the Fourteenth Amendment as
14 | opposed to a substantive due process claim under the Fourteenth Amendment.
15 |     Plaintiffs' allege that the City's refusal to allow them to challenge or appeal the Notices of
16 | Nuisance activity is a denial of due process. (Complaint at 8:6-7.) As mentioned above, the two
17 | "notices of nuisance" referenced by Plaintiffs could not have been the City's Declaration of
18 | Nuisance of which the responsible party is entitled to appeal. There is only one Declaration of
19 | Nuisance dated March 15, 2006 which sets forth the basis for the city's actions and describes the
20 | appeal procedures. (RJN, Exhibit B.) Letters written from the City Attorney's Office are not
21 | administrative declarations of nuisance subject to appeal. Letters from the City Attorney would be
22 | in anticipation of court action. Only the City Manager or her designee is authorized to take such
23 | administrative action. (OMC §1.08.040.) Hence, Plaintiffs' allegations that they were denied an
24 | opportunity to appeal letters written by the City Attorney's office fail to state a due process claim
25 | upon which relief can be granted.
26 |     Plaintiffs also allege that the City's refusal to challenge, appeal or allow inspections
27 | concerning its closure notice issued by defendant Graef is a denial of due process (Complaint at
28 | 8:7-9) is also misguided. Plaintiffs had no constitutionally protected right to have the City appeal or

1  otherwise challenge its own closure notice.

2  To the extent that Plaintiffs challenge the fact that a separate notice of the city's nuisance
3  declaration was not sent to them, the City mailed the notice to the person responsible for the
4  property (which would be the owner) as required by the municipal code. O.M.C. §1.08.050.
5  Nothing in the code suggests that tenants of every property are entitled to separate and individual
6  notices of the City's abatement action. As such, the City gave constitutionally adequate notice of its
7  declaration that 370 Embarcadero West was a public nuisance.

8  Moreover, in the absence of a deprivation of a cognizable property or liberty interest, there
9  can be no constitutional due process violation. *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir.
10 2000). Here, while plaintiffs may have had a property interest in their lease, they have not alleged
11 that they have been deprived of that lease. Indeed, the lease is effective until June 30, 2009.
12 (Complaint at 3:21.) The City's nuisance abatement actions have not deprived them of the lease. If
13 Plaintiffs lose their lease as a result of the unlawful detainer action filed against them by the owner
14 of the property, that deprivation will take place in a court of law where plaintiffs will have every
15 opportunity to be heard.

### K. PLAINTIFFS' FIRST AMENDMENT CLAIM MUST BE DISMISSED BECAUSE THE FACE OF THE COMPLAINT SHOWS THERE IS NO BASIS FOR THE CLAIM BEYOND PLAINTIFFS' SPECULATION.

18 The Constitution generally defines a system of limited government, and seeks to inhibit the
19 ability of the state to impose its will. In that regard, the First Amendment is meant to prevent
20 unwarranted government intervention in matters of expression, religion, and assembly. *See e.g.*
21 *Police Department v. Mosley*, 408 U.S. 92, 95 ("the First Amendment means that the government
22 has no power to restrict expression because of its message, its ideas, its subject matter, or its
23 content.").

24 Here, there is no conduct alleged that demonstrates an intention to chill Plaintiffs' rights of
25 expression whether musically or politically or any other behavior implicated by the First
26 Amendment. Solely on the basis of speculation, plaintiffs allege the closure of Mingles Night Club
27 is motivated in part and has the affect of removing a distinct form of musical and political
28 expression from the Jack London Square. (Complaint at 8:18-22.) These allegations are insufficient

1 to state a First Amendment Claim. Furthermore, by Plaintiffs' own admissions, Plaintiff John Ivey

2 voluntarily closed Mingles Night Club out of concern for public safety. (Complaint at 5:2-3.) As

3 such, Plaintiffs have failed to state a First Amendment claim.

4      While the standards of pleading on a motion brought under 12(b)(6) are generous, a plaintiff

5 is nonetheless required to provide more than mere speculation and legal conclusions in the place of

6 facts. *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). Plaintiffs' first

7 amendment allegations are purely speculative and contradictory, and their Third Cause of Action

8 should be dismissed accordingly.

9 **L.    THE FIRST, SECOND AND THIRD CIVIL RIGHTS CAUSES OF ACTIONS
        FAIL TO ALLEGE THAT THE ALLEGED MISCONDUCT WAS THE**
10 **     RESULT OF A CITY POLICY OR CUSTOM.**

11      In order to impose liability on a local governmental entity for failing to preserve

12 constitutional rights, a Section 1983 plaintiff must prove "(1) that she possessed a constitutional

13 right of which she was deprived; (2) that the municipality had a policy; (3) that this policy

14 amounted to deliberate indifference to the Plaintiff's constitutional right; and (4) that the policy

15 "was the moving force behind the constitutional violation." *Oviatt v. Pierce*, 954 F.2d 1470, 1474

16 (9th Cir. 1992).

17      A plaintiff may prove that there is an "official policy" sufficient to impose municipal

18 liability under Section 1983 in several ways. A plaintiff can identify the "edicts or acts" of an

19 official policy maker charged with authority over the specific area in which the policy is applicable.

20 *Monell v. New York Department of Social Services*, 436 U.S. 658, 694 (1978), *Ulrich v. City and*

21 *County of San Francisco*, 308 F.3d 968 (9th Cir. 2002). Alternatively, a plaintiff may show that an

22 official policy maker ratified the policy announced by a subordinate employee, and the reasons for

23 that policy. *City of St. Louis v. Praprotnick*, 485 U.S. 112, 127 (1988), *Gillette v. Delmore*, 979

24 F.2d 1342, 1348 (9th Cir. 1992). Finally, a plaintiff may demonstrate that a custom, practice or

25 usage exists within a municipality that is as persistent and widespread as to be deemed an official

26 policy, even when those customs or practices deviate from the written or otherwise officially

27 articulated policies of the public entity. *Monell*, 436 U.S. at 690-91 (*citing Adickes v. S.H. Kress &*

28 *Co.*, 398 U.S. 144, 167-68 (1970)). Isolated and sporadic incidents simply cannot form the basis

1 for municipal liability. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

2   Here, the Complaint does not contain any allegations sufficient to establish a claim for liability against the public entity defendants under any viable ground for municipal liability. Plaintiffs have failed to identify an official policy or custom of the City of Oakland upon which they base their *Monell* claim for violations of their rights to due process, equal protection and free speech.

6   A public entity is not vicariously liable for the actions of its employees. It can be liable for the actions of an individual only when that individual is a final policy maker in the particular matter of public policy at issue in a particular case. The question of whether a public official is a final policy maker is a question of state law, and one consigned to the court. *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989).

11  Here, there are no allegations identifying the actions of an official policy maker at all, let alone any identifying actions of such an individual that violated plaintiffs' constitutional rights such that the City can be held liable for his/her actions. Plaintiffs have not alleged that there is a policy or widespread practice of the city to deny individuals notice and an opportunity to be heard regarding its administrative nuisance abatement actions. This single incident that is the subject of plaintiffs' action is insufficient to state a *Monell* claim against the City under any of the civil rights causes of action alleged. Most importantly, plaintiffs have failed to make it past the first step in the *Monell* analysis by failing to sufficiently allege that they possessed a constitutional right of which they were deprived. Therefore, the complaint fails to state a claim against the City of Oakland upon which relief can be granted.

## IV.   CONCLUSION

For the reasons set forth above, defendants' motion to dismiss should be granted.

DATED: May 29, 2007

JOHN A. RUSSO, City Attorney
RANDOLPH W. HALL, Chief Assistant City Attorney
JAMES F. HODGKINS, Supervising Trial Attorney
CHARLES E. VOSE, Senior Deputy City Attorney
KANDIS A. WESTMORE, Deputy City Attorney

By: /S/ KANDIS A. WESTMORE
Attorneys for Defendants,
CITY OF OAKLAND, et al.