JOHN A. RUSSO, City Attorney - State Bar #129729
RANDOLPH W. HALL, Assistant City Atty., SBN 080142
JAMES F. HODGKINS, Supervising Trial Atty., SBN 142561
CHARLES E. VOSE, Senior Deputy City Atty., SBN 139700
KANDIS A. WESTMORE, Deputy City Atty., SBN 194594
One Frank H. Ogawa Plaza, 6th Floor
Oakland, California 94612
Telephone: (510) 238-3589, Fax: (510) 238-6500
kawestmore@oaklandcityattorney.org
25759/412719

Attorneys for Defendants CITY OF OAKLAND,
JOHN RUSSO, ETHAN NASR, JACOB GRAEF,
AND ARTURO SANCHEZ

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRED ANDY IVEY DBA AFI MARKETING AND JOHN IVEY,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, CALIFORNIA, 370 EMBARCADERO W LLC, VANGUARD PROPERTIES, INC., JACOB GRAEF, JOHN RUSSO, ETHAN NASR, TOM BERLIN, ARTURO SANCHEZ, and DOES 1 THROUGH 50,<br><br>Defendants. | Case No. C07-02675 EDL<br><br>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS [FRCP 12(b)(6)]**<br><br>Date:     August 7, 2007<br>Time:    9:00 a.m.<br>Courtroom: Courtroom E, 15th Floor<br>Magistrate Judge Elizabeth D. Laporte |

**I.     INTRODUCTION**

Defendants/Respondents CITY OF OAKLAND et al. (hereinafter referred to as "Defendants"), hereby submits their Reply Memorandum in Support of their Motion to Dismiss the Complaint.

Plaintiffs' Opposition to the Defendants' Motion to Dismiss confirms several contentions raised in that motion which compel dismissal. As developed below, plaintiffs have offered no effective response to the defendants' demonstration that they failed to allege sufficient grounds to

1  support their substantive claims, and the defendants' motion should be granted accordingly.

## II.    LEGAL ARGUMENT

**A.   PLAINTIFFS' RELIANCE ON THE "EXHAUSTION DOCTRINE" IS MISPLACED AND DOES NOT EXCUSE PLAINTIFFS' FAILURE TO ABIDE BY WRIT PROCEEDINGS PRIOR TO BRINGING INVERSE CONDEMNATION AND DUE PROCESS CLAIMS.**

In their opposition, Plaintiffs' admit that they failed to comply with mandatory procedural writ requirements. They mistakenly contend, however, that they are excused from compliance under "exhaustion doctrine" exceptions.

"Compliance with procedural writ requirements 'remains a necessary predicate to institution of inverse condemnation proceedings." Serra Canyon Co., Ltd v. Cal. Coastal Commn., 120 Cal. App. 4th 663, 669 (2d Dist. 2004). This is so regardless of whether plaintiff pleads her cause of action as one for inverse condemnation or as a denial of due process because the essential underpinning is the invalidity of the administrative action. Id. In Serra, the California Coastal Commission ("Commission") conditioned an oceanfront property owner's development of a mobile-home park upon the owner's execution of an irrevocable offer to dedicate a portion of property to the state. The owner executed the agreement, but a subsequent owner sought an injunction to enjoin the state from enforcing the agreement claiming the action was an unconstitutional taking of the property. The Serra court rejected this taking claim because it remained a collateral attack on an agreement which became immune from review following the original owner's failure to seek a timely writ review of the Commission's action within the prescribed statute of limitations period. Id. at 670. The court noted property owners could not make an "end run around" writ requirements by shrouding a cause of action as a constitutional claim. Id. at 669.

Serra is on-point because it reaffirms the requirement that governmental actions affecting enjoyment of property interests must be initially challenged via writ review before inverse condemnation or due process claims are brought. Plaintiffs' seek legal redress for the City's nuisance abatement action which Plaintiffs' claim has adversely affected their leasehold interest. Plaintiffs' have not initiated writ proceedings to evaluate this allegedly unconstitutional

1  administrative act.  Thus, Plaintiffs' claim is precluded for failing to seek writ review of the City's
2  administrative decision.

3     Plaintiffs erroneously assert that they are excused from complying with procedural writ
4  requirements prior to commencing their civil action, claiming the City's failure to respond to
5  Plaintiffs' administrative appeals amounts to City interference in seeking to avail themselves of the
6  writ process, placing Plaintiffs' cause of action within the ambit of "exhaustion doctrine"
7  exceptions. (Plaintiffs' Opposition to Motion to Dismiss, 6:22).  Such assertions are incorrect for
8  two reasons.  First, the "exhaustion doctrine" deals with institutional remedies available within
9  administrative bodies which must be exhausted prior to brining a lawsuit.  Rojo v. Kliger, 52 Cal.
10  3d 65, 83 (1990).  Second, Plaintiffs' administrative appeals to the City Attorney's office does not
11  indicate an attempt to seek a writ of mandamus as the City Attorney is not empowered to issue
12  writs or any other court orders.

13     Plaintiffs' reliance on the "exhaustion doctrine" is entirely inapplicable to writ
14  requirements.  Where an administrative remedy is provided by statute, "relief must be sought from
15  the administrative body and such remedy exhausted" before judicial relief respecting that remedy is
16  available.  Id.  The preceding summation of the "exhaustion doctrine" explicitly distinguishes
17  between "administrative remedies" and "judicial relief."  Defendants' do not claim Plaintiffs' suit
18  must be dismissed because they have failed to exhaust "administrative remedies," thus any
19  exceptions to such requirements are inconsequential.  Plaintiffs' suit must be dismissed for failing
20  to abide by writ requirements.  Writs *are* judicial relief, and are unrelated to seeking appeals within
21  government agencies.  "Exhaustion doctrine" exceptions do not provide relief for Plaintiffs' failure
22  to abide by procedural writ requirements.

23     In addition, Plaintiffs' claim they are excused from abiding by procedural writ requirements
24  prior to bringing suit because the City interfered with their attempts to avail themselves of the writ
25  process by refusing to accept their administrative appeals. (Plaintiffs' Opposition to Motion to
26  Dismiss, 6:23).  Drafting administrative appeals addressed to the City Attorney's Office, however,
27  does not indicate an attempt by Plaintiffs' to avail themselves of the writ process because the City
28  Attorney is not empowered to review administrative decisions and issue court orders.  Thus, the

1  City Attorney's refusal to accept Plaintiffs' administrative appeals does not indicate City
2  interference with Plaintiffs' seeking a writ; they did not seek a writ at all.
3      Further, it is incongruous to contend Plaintiffs' are entitled to build their case for the
4  purposes of determining whether the writ requirements are applicable because it is the writ
5  requirements that foreclose this action.

6  **B.** **PLAINTIFFS' INVERSE CONDEMNATION CLAIM FAILS TO ALLEGE DEFENDANTS' ACTIONS RESULTED IN A TAKING FOR PUBLIC USE BECAUSE PLAINTIFFS' OMIT SPECIFIC FACTUAL ALLEGATIONS SUPPORTING THEIR CONTENTION THAT THE CITY HAS TAKEN PROPERTY PURSUANT TO AN ECONOMIC REDEVELOPMENT PROJECT.**

10      Plaintiffs' assert the City's nuisance abatement actions are a "taking" for a public use
11  because it was executed pursuant to an economic development agenda to increase the City's tax
12  base. (Plaintiffs' Opposition to Motion to Dismiss, 7:25). Plaintiffs' correctly assert that takings of
13  land under eminent domain proceedings are taken for "public use" when brought to further an
14  economic redevelopment plan. Kelo v. City of New London, Conn, 545 U.S. 469 (2005). Plaintiffs
15  have omitted, however, any factual allegations that could characterize the City's actions as a taking
16  for public use as outlined in Kelo. Kelo involved formal eminent domain proceedings brought to
17  obtain land for the purpose of transferring to other private entities. The City of New London
18  actually engaged in negotiations to provide the Kelo property owners with just compensation,
19  however, an agreement was not reached.
20      In Kelo it was clear the taking was to revitalize an economy because it was executed under a
21  plan approved by a city council. Here, the City has not brought formal eminent domain
22  proceedings, there are not facts alleged indicating that the City intends to transfer the property to
23  another owner, and there is no reason to believe the subject property is going to be the target of city
24  redevelopment. Plaintiffs' merely conclude the City's nuisance abatement actions are in
25  furtherance of an economic development agenda. This is insufficient to meet the pleading
26  requirements espoused by the Supreme Court.
27      Plaintiffs' assert pleadings can only be dismissed if "it appears beyond doubt that the
28  plaintiff can prove no set of facts in support of [their] claim which would entitle [them] to relief."

(Plaintiffs' Opposition to Motion to Dismiss, 3:22) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). This is no longer the law as such pleading standards have been unequivocally rejected by the Supreme Court. Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 1969 (2007).[1] "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. 1964-65  The Bell plaintiffs' allegation of parallel conduct was insufficient to withstand a Rule 12(b)(6) motion because their complaint lacked "enough *factual* matter" to suggest that the defendant in the case had acted out of conspiracy to restrain trade, rather than as a result of typical business strategy. Id. at 1965, 1971-73 (emphasis added).

Here, Plaintiffs claim that the City undertook its nuisance abatement action to further its economic agenda, thus amounting to a taking for a public use. This is not a factual allegation. This is nothing more than "labels and conclusions" commonly referred to in 5th Amendment takings claims. Plaintiffs' have failed to supply any factual allegations suggesting the City intends convert Plaintiffs' nightclub into residential housing pursuant to an economic development agenda. The City's administrative actions are reasonable because they were carried out in the interests of the public welfare; even Plaintiff John Ivey closed Mingles night club out of concern for public safety. (Defendants Motion to Dismiss, 4:10). Unless the Plaintiffs' offer additional factual allegations supporting the proposition the City executed its administrative acts to further an economic development agenda, this claim must be dismissed for failure to state a claim upon which relief can be granted.

C. **THE CITY'S NUISANCE ABATEMENT ACTION WAS REGULATORY CONDUCT EXERCISED THROUGH ITS POLICE POWER, NOT A DIRECT TAKING OF PROPERTY THAT REQUIRED AN EMERGENCY CONDITION PRECEDENT.**

Plaintiffs' assert the City improperly exercised its police power in its nuisance abatement

---

[1] The U.S. District Court of Northern California has promptly employed the Bell holding. In re Netflix Antitrust Litigation, 2007 WL 1725422 (N.D. Cal. 6/14/07) (elements of a cause of action will not find support from factually neutral allegations; when business entity conduct is equally understood as the product of independent market forces as it is of culpable motivations, such conduct will not support an antitrust claim).

1  actions because the City interfered with Plaintiffs' property interest absent an emergency and
2  compelling need. Plaintiffs' argument is confused at best.
3       "[T]he police power of a state embraces regulations designed to promote . . . general
4  prosperity . . . . Compensation has never been a condition of its exercise even when attendant with
5  inconvenience or peculiar loss . . . . But the clause prohibiting the taking of private property
6  without compensation is not intended as a limitation of the exercise of those police powers . . . ."
7  Samuel Gray v. Reclamation District, 174 Cal. 622, 642-43 (1917).  When the activities of the
8  public agency have been carried on in the exercise of its police powers, the effects of those
9  activities is not compensable under that state constitution.  Niles Sand & Gravel Co. v. Alameda
10 Co. Water Dist., 37 Cal. App. 3d 924 (1st Dist. 1974).  Niles involved a water district created for
11 the purpose of conserving ground water in a basin subsequently utilized by a gravel company to
12 excavate natural resources for its product.  The water district's water level maintenance in the basin
13 led to the flooding of the gravel company's caverns, which the company drained by pumping into
14 the San Francisco Bay.  The public entity was granted an injunction enjoining the gravel company
15 from further draining, and the court rejected the company's inverse condemnation claim that
16 flooding of their caverns amounted to an unconstitutional "taking."  Id. at 937.  The company was
17 not entitled to compensation because the water district's maintenance of the basin was a legitimate
18 exercise of police power as it was carried out pursuant to a California Constitutional mandate that
19 water be conserved for the public welfare.  Id. at 936-37.  As in Niles, the City has exercised its
20 police power to further the objectives of legislation intended to promote public welfare.  Oakland
21 Municipal Code § 1.08 et seq. vests the City with authority to pursue nuisance abatement actions.
22 Property interests incidentally affected by the City's administrative determinations of nuisance
23 properties are not compensable under inverse condemnation proceedings, as such determinations
24 are made through the proper exercise of police power.
25      Plaintiffs' believe they find support for their position in Holtz v. Sup. Ct., 3 Cal. 3d 296
26 (1970).  However, Holtz drew an explicit distinction between exercising police power "in the field
27 of regulations" as opposed to "more direct" takings.  Id. at 305.  The requisite "emergency"
28 threshold only applies to "more direct" takings; "[i]nstances of this character are the demolition of

1  all or parts of buildings to prevent the spread of conflagration, or the destruction of diseased
2  animals, or rotten fruit . . . ." Id. at 305 n. 10.  Holtz aligns more direct takings with physical
3  intrusions that require emergency conditions as a predicate to the exercise of police power.
4  Plaintiffs' have not alleged interference with their property amounting to a "direct" taking or
5  physical intrusion; their claim stems from a regulatory enforcement of nuisance abatement laws.
6  Such actions are immune from "emergency" conditions because it is an exercise of police power in
7  the field of regulation "rendering 'damages' occasioned by the adoption of administrative or
8  legislative provisions noncompensable." Id. at 305.  Hence, emergency requirements are
9  inapplicable to the conduct Plaintiffs' allege has affected their property, and the City's exercise of
10 its police power was proper.

11 **D.    PLAINTIFFS' ARE NOT EXCUSED FROM ALLEGING ACTUAL MALICE
        ON BEHALF OF LT. BERLIN DURING TO SUSTAIN THEIR LIBEL
12      CLAIM.**

13     Plaintiffs' assert a libel claim may be sustained against Lt. Berlin absent a showing of actual
14 malice despite statutory language that "[a] public employee acting in the scope of his employment
15 is not liable for an injury caused by his misrepresentation . . . unless he is guilty of . . . actual
16 malice." Cal. Gov. Code § 822.2 (2007).  Plaintiffs' claim their cause of action is sufficient by
17 supplanting a showing of actual malice with allegations of facts that infer malice, the lack of a good
18 faith belief in the statements published, or recklessness.  (Plaintiffs' Opposition to Motion to
19 Dismiss, 9:28) (citing, Brewer v. Second Baptist Church, 32 Cal. 2d 791 (1948).  Roemer v. Retail
20 Credit Co., 3 Cal. App. 3d 368 (1970)).  Brewer and Roemer are inapplicable to determinations of
21 allegedly malicious misrepresentations by public employees.  Brewer involved libel actions taken
22 against church administrators, while Roemer involved defamatory claims made against a mercantile
23 agency.  Neither Brewer nor Roemer addressed potential liability of public employees, and they
24 certainly did not evaluate the application of § 822.2.  To permit an inference of malice on behalf of
25 Lt. Berlin would contravene the clear language of § 822.2 that an employee be guilty of *actual*
26 malice, "i.e., a conscious intent to deceive, vex, annoy or harm the injured party." Masters v. San
27 Bernardino Co. Employees Ret. Assn., 32 Cal. App. 4th 30, 42 (4th Dist. 1995).  Plaintiffs' only
28 allege Lt. Berlin made statements without basis, or recklessly with possible knowledge it was false.

1  (Plaintiffs' Opposition to Motion to Dismiss, 10:16).  This is insufficient as Plaintiffs' have not

2  alleged facts demonstrating that such statements were made with a conscious intent to deceive, vex,

3  annoy or harm the injured party.  Masters, 32 Cal. App. 4th at 42.  Further, the court must not heed

4  Plaintiffs' proffered exceptions to § 822.2 because such authority does not address public employee

5  liability or § 822.2 immunity, and is thus inapplicable.

6  **E.    LT. BERLIN'S COMMENTS TO THE MEDIA ARE ABSOLUTELY
         PRIVILEGED BECAUSE THEY WERE MADE IN THE PROPER
7        DISCHARGE OF AN OFFICIAL DUTY AND SUCH PRIVILEGES
         UNAFFECTED BY ALLEGATIONS OF MALICE.**
8

9       "A privileged publication or broadcast is one made . . . [i]n the proper discharge of an

10 official duty."  Cal. Civ. Code § 47(a) (2007).  A District Attorney who issued a press release

11 summarizing the results of an investigation that there had been minor Brown Act violations by

12 undisclosed members of a school board was a privileged publication under § 47(a) because it was

13 made in the proper discharge of an official duty.  Ingram v. Flippo, 74 Cal. App. 4th 1280, 1294

14 (6th Dist. 1999).  This was so even though the District Attorney had not, and did not intend to,

15 prosecute or file a civil action in response to the investigation.  Id.  While the Ingram plaintiff

16 school board member sought a declaration she had not violated the Brown Act, and an injunction

17 restraining the District Attorney from threatening further action, the court noted the crux of the

18 plaintiff's allegations against the District Attorney sounded in tort in the nature of an action for

19 defamation.  Id. at 1290.

20      Berlin's comments to the media are privileged under § 47(a) because, like Ingram, they

21 were made following an official investigation regarding conduct which carried potential criminal

22 penalties, and as such were comments made in the proper discharge of his official duties.  It is

23 immaterial that formal charges had not been brought by the time Berlin made his comments; the

24 District Attorney in Ingram did not even intend to initiate legal proceedings.  Id. at 1294.

25      Plaintiffs' dispute Berlin was acting in the proper discharge of an official duty; rather,

26 Plaintiffs' contend such findings are precluded because Berlin allegedly acted maliciously while

27 speaking to the press.  (Plaintiffs' Opposition to Motion to Dismiss, 10:9).  "A publication made

28 '[i]n the proper discharge of an official duty' is **absolutely** privileged."  5 Witkin, Summary of Cal.

1  Law 10th, Torts § 564, p. 822 (2005) (emphasis added).  Moreover, the privilege conferred by §

2  47(a) (formerly § 47(1)) is absolute and unaffected by the existence of malice.  Royer v. Steinberg,

3  90 Cal. App. 3d 490, 500 (1st Dist. 1979).  Thus, Plaintiffs' allegations of malice on behalf of

4  Berlin do not prevent a finding that his conduct is privileged and not subject to litigation.

**F.    COMMENCEMENT OF JUDICIAL PROCEEDINGS DOES NOT OCCUR EXCLUSIVELY UPON THE BRINGING OF FORMAL CHARGES; LT. BERLIN'S INVESTIGATION OF A CRIME AT PLAINTIFFS' BUSINESS FALLS WITHIN THE MEANING OF JUDICIAL PROCEEDINGS UNDER CAL. GOV. § 821.6.**

8  "A public employee is not liable for injury caused by his instituting or prosecuting any

9  judicial or administrative proceeding within the scope of his employment, even if he acts

10 maliciously and without probable cause."  Cal. Gov. Code § 821.6 (2007).  Plaintiffs' assert

11 § 821.6 immunity is inapplicable to the conduct of Lt. Berlin because his alleged defamatory

12 conduct was not rendered in the course of a judicial or administrative proceeding.  (Plaintiffs'

13 Opposition to Motion to Dismiss, 9:17).  In so claiming, Plaintiffs' ignore authority provided by

14 Defendants' in their moving papers.

15      Actions taken during the course of an investigation are immune under § 821.6 because they

16 are an essential step in the preparation for formal judicial proceedings.  Amylou R. v. County of

17 Riverside, 28 Cal. App. 4th 1205, 1209-10 (4th Dist. 1994).  Without providing any legal support,

18 Plaintiffs' conclude Berlin did not make statements in the course of judicial proceedings.

19 (Plaintiffs' Opposition to Motion to Dismiss, 9:19).  This argument is without merit because Berlin

20 responded as an on-duty peace officer to investigate a shooting at Plaintiffs' business, and

21 subsequently made an allegedly defamatory statement during the course of his investigation.  Such

22 conduct is not actionable because it falls within the immunity prescribed by § 821.6, which seeks to

23 protect public officers from harassment for performance of a duty that is in the best interests of the

24 community as a whole.  White v. Towers, 37 Cal. 2d 727, 729 (1951).  The immunity provided to

25 Berlin extends to the City because a "public entity is not liable for an injury resulting from an act or

26 omission of an employee of the public entity where the employee is immune from liability."  Cal.

27 Gov. Code § 815.2(b) (2007).

28 ///

**G.  PLAINTIFFS' FIRST AMENDMENT CLAIM MUST BE DISMISSED BECAUSE PLAINTIFFS' FAIL TO ALLEGE ANY FACTUAL BASIS SHOWING THE CITY SOUGHT TO DEPRIVE PLAINTIFFS' FREEDOM OF SPEECH.**

Plaintiffs' dispute claims that the City justifiably initiated its nuisance abatement actions against the property where Plaintiffs' nightclub was located despite the fact that Plaintiff John Ivey voluntarily closed Mingles Night Club out of concern for public safety. (Defendant's Motion to Dismiss, 4:9). Rather, Plaintiffs' contend nuisance abatement proceedings were initiated to deprive Plaintiffs' from participating in a particular form of speech. (Plaintiffs' Opposition to Motion to Dismiss, 11:16). In response to Defendants' allegations that Plaintiffs' claims are purely speculative, Plaintiffs' respond that First Amendment pleadings only require demonstration of some basis upon which to have a good faith belief that the City's conduct was aimed at curbing their free speech rights. (Plaintiffs' Opposition to Motion to Dismiss, 11:13). In addition to omitting legal authority in support of this alleged pleading requirement, Plaintiffs' also omit specific factual allegations that would support a basis for such a belief, or the process by which they made such determinations. Again, to merely assert the City's nuisance abatement actions were aimed at curbing free speech, without any factual support indicating the City intended to deprive plaintiffs of their First Amendment rights, is a mere label and conclusion that does not withstand the basic pleading requirements handed down by the Supreme Court. <u>Bell Atlantic</u>, 127 S. Ct. 1955. Accordingly Plaintiffs' First Amendment cause of action must be dismissed for failure to state a claim upon which relief can be granted.

### III.  CONCLUSION

For the reasons set forth above, defendants' motion to dismiss should be granted.

DATED: July 24, 2007

          JOHN A. RUSSO, City Attorney
          RANDOLPH W. HALL, Chief Assistant City Attorney
          JAMES F. HODGKINS, Supervising Trial Attorney
          CHARLES E. VOSE, Senior Deputy City Attorney
          KANDIS A. WESTMORE, Deputy City Attorney


          By: /S/ KANDIS A. WESTMORE
          Attorneys for Defendants,
          CITY OF OAKLAND, et al.